No. 25,205.

*In re* the Appeal of MINNIE RALSTON from Survey of J. HOMER AUSTIN, County Engineer. (MINNIE RALSTON, *Appellant*) v. GROVER DWIGGINS, *Appellee.*

SYLLABUS BY THE COURT.

SURVEY—*Boundaries of City Lots—Evidence Sustains Findings of Trial Court.* The evidence produced on an appeal from a survey examined and held to be sufficient to sustain the survey made which was approved and upheld by the trial court.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed April 5, 1924. Affirmed.

*N. A. Yeager,* and *R. A. Cox,* both of Augusta, for the appellant.
*C. W. McVickers,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from the survey of a line between lots eleven and twelve in block twenty-seven, of the city of Augusta, lot eleven being owned by Grover Dwiggins and lot twelve

by Minnie Ralston, and the controversy involves a strip of ground about six feet wide. On the plat the lot of Dwiggins appears to be fifty feet wide, while that of Ralston which was on the north side of the townsite was shown to be forty feet wide. The survey in question as made established the line so as to give Dwiggins a full fifty foot lot while it left a shortage in lot twelve owned by Ralston. In her appeal she contends that the survey which was made by the county engineer, Austin, was incorrectly made. A great deal of testimony was taken in the district court on the hearing of the appeal, and at the close of the trial the case was taken under advisement. Later the court ordered that another survey be made as a test of the former one, and this was made by Barnes, the successor of Austin, who in the interim had resigned his office and the survey made by Barnes was confirmatory of that made by Austin. Appellant still contended that the surveys were incorrect and the trial court ordered that there should be a further survey by a surveyor from another county, and one was made by Ruggles, the county surveyor of Cowley county, with the result that his findings and report supported those made by Austin and Barnes. On these findings and other testimony, some of which was conflicting, the trial court reached a decision in favor of Dwiggins.

The question of the boundary line between the city lots is one of fact. The original survey was made many years ago, when Augusta was organized. How the plat was placed on the ground by the original survey was not easily ascertained. Most of the original marks and monuments had disappeared but there were some recognized monuments found by the surveyor. One of these surveyors stated that:

"The original location of the stakes, set at the property lines when the land is subdivided, takes precedence over all other points, regardless as to whether they were set exactly as the recorded plat indicates or not. And original stakes found in the block in which the lines in question are located take precedence over stakes found in any other block. With this fact in view I looked for original stakes in the block in question, with a measure of success."

As he states, some old stakes were found in such a state of preservation as to furnish identification, and also stakes set many years ago which had been set by a railroad company that had purchased lots and was interested in finding established lot lines. All of these tended to confirm the boundary line fixed in the survey in question. It was also confirmed by a recognized and recorded monument near

the center of the city according to which many substantial buildings had been erected and improvements in streets and alleys had been made. These stakes and original monuments cannot be ignored. It has been said that:

"The primary rules for locating city plats upon the ground are, in order of precedence in application, as follows: (1) Find the lines actually run and the corners and monuments actually established by the original survey. (2) Run lines from known, established or acknowledged corners and monuments of the original survey. (3) Run lines according to courses and distances marked on the plat." (*In re* Richardson, 74 Kan. 557, 87 Pac. 678).

It is urged that the section line was the proper base line which the surveyor should have ascertained and from which his measurements and calculations should have been made. That leaves out of consideration the original survey as actually located upon the ground. A certain hedge fence is spoken of as having been used as a base line in early days but time has erased that mark. The monuments and marks found by the surveyor furnished reasonably good evidence in locating the original survey. In *Ayres v. Watson*, 137 U. S. 584, it was held in effect that in ascertaining the lines of lands, the tracks of the surveyor so far as discoverable on the ground with reasonable certainty should be followed and marked trees designating corners or lines on the ground should control both parties, and that where the survey of land has been actually run and measured and ascertained, monuments are referred to in it, the footsteps of the surveyor may be traced backward as well as forward and any ascertained monument in the survey may be adopted as a starting point where difficulty exists in ascertaining the lines actually run. The court remarked that:

"The beginning corner does not control more than any other corner actually ascertained, and that we are not constrained to follow the calls of the grant in the order they stand in the field notes, but may reverse them and trace the lines the other way, whenever by so doing the land embraced would more nearly harmonize all the calls and the objects of the grant." (p. 599.) (See, also, *Hord v. Olivari* [Texas], 5 S. W. 57; *Ocean Beach Asssociation v. Yard*, 48 N. J. Eq., 72.)

The survey approved appears to conform with the recognized boundary line of lots in the city upon which buildings have been erected and expensive improvements made. The boundaries so generally accepted and recognized for many years lends some support to the survey approved by the court. (*Tarpenning v. Cannon*, 28 Kan. 665). The surveyor testified that if appellant's theory were

adopted, "it would move every existing improvement in town six feet." A consideration of all the evidence leads us to the view that the decision of the trial court as to the boundary line of the lots should be sustained.

There is a further contention that the appellant was entitled to the strip in question through adverse possession because a small building and some other improvements projected beyond the boundary line as fixed by the court. Such possession as existed cannot be regarded as adverse between the parties. Appellee was claiming the full extent of his lot and an essential consideration is the intent with which possession is taken and held. There is testimony that when an earlier survey was made showing the boundary line appellant recognized that some of her improvements were upon appellee's lot and at that time she tried to purchase the strip from appellee's grantor. In no view can it be held that appellant is entitled to the strip upon the ground of adverse possession.

The judgment is affirmed.